Karl ONSTAD, Appellant,

v.

Donna E. SHALALA,* Secretary of Health and Human Services, Appellee.

No. 92–2768.

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1993.

Decided July 22, 1993.

Rehearing Denied Aug. 27, 1993.

---

* Donna Shalala has succeeded Louis W. Sullivan as Secretary of Health and Human Services, and we have therefore substituted her as party appellee in the place of Secretary Sullivan. Fed. R.App.P. 43(c).

Paul E. Mundt, Winona, MN, argued, for appellant.

Michael C. Messer, Health and Human Services, Chicago, IL, argued (Eric Schnaufer, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, JOHN R. GIBSON and FAGG, Circuit Judges.

RICHARD S. ARNOLD, Chief Judge.

Karl Onstad appeals the holding of the District Court,[1] which affirmed the denial of the Secretary of Health and Human Services's of his claim to disability benefits. We affirm the judgment of the District Court.

### I.

Mr. Onstad says that he is disabled as the result of a combination of physical and mental impairments that prevent him from working. The Administrative Law Judge[2] disagreed. He applied the five-step procedure of 20 C.F.R. § 416.920 and determined that while Mr. Onstad does have severe physical

---

1. The Hon. James M. Rosenbaum, United States District Judge for the District of Minnesota, acting on the recommendation of the Hon. J. Earl Cudd, United States Magistrate Judge for the District of Minnesota.

2. The Hon. Leonard A. Nelson.

and mental impairments, he is nonetheless able to work at sedentary jobs, of which a substantial number exist.

Mr. Onstad testified that while he suffered pain from an old motorcycle accident, he was still able to walk for up to two hours, ride a bicycle, and exercise for twenty minutes at a time on an exercise machine. The ALJ found that Mr. Onstad was not taking pain relievers and, while he walks with a limp, he is able to get around.

As to his mental disabilities, Mr. Onstad suffers from some depression, alcoholism, and a personality disorder. The ALJ found that these disabilities do not, of themselves, prevent him from working. Mr. Onstad offered evidence to the contrary; but what evidence to believe and what weight to give it is the prerogative of the fact-finder, within broad limits. There is ample evidence to support the finding that his mental problems do not prevent Mr. Onstad from working at some jobs.

## II.

Mr. Onstad argues that his cause should be remanded because the ALJ did not fully develop the record. In considering this argument, our inquiry is whether Mr. Onstad was prejudiced or treated unfairly by how the ALJ did or did not develop the record; absent unfairness or prejudice, we will not remand. *Phelan v. Bowen,* 846 F.2d 478, 481 (8th Cir.1988). Specifically, Mr. Onstad says the record is not fully developed because some medical records were not obtained. For instance, the results of psychological testing performed by a psychologist are not part of the record, but the expert's summary of that testing is. We are not convinced that these results, or any of the other items claimant says were omitted, would be important enough to make a difference in the circumstances of this case. While the ALJ has a duty to develop the record fully and fairly, *Driggins v. Harris,* 657 F.2d 187, 188 (8th Cir.1981), even when a claimant has a lawyer, it is of some relevance to us that the lawyer did not obtain (or, so far as we know, try to obtain) the items that are now being complained about. Mr. Onstad was treated fair-

ly, and he has failed to show that he was prejudiced.

Next, Mr. Onstad argues that the ALJ erred in weighing the evidence provided by the professionals who examined him according to their academic credentials. What weight to give competing testimony is a credibility issue, one properly left to the fact-finder. It is not error to consider the fact that one expert has a doctorate, while another (here the one most favorable to claimant) does not. This was only one factor in the decision to reject the claimant's expert's conclusion, anyway.

Finally, Mr. Onstad says the Secretary failed to meet her burden at step five, proving that there were jobs available to a person with his impairments. He says that when the vocational expert testified that such jobs were available, she was answering a hypothetical question that did not take into account the psychological impairments attributed to Mr. Onstad by his psychologist, or the finding of a consulting doctor, who said Mr. Onstad was able to stand and walk for only one hour out of an eight-hour day.

As we said, the weight given to testimony is for the fact-finder to decide in the first instance. If the ALJ did not find Mr. Onstad's psychologist credible, or if the ALJ did not believe that the psychologist's findings were supported by substantial evidence (these are really the same thing), then he was under no duty to incorporate those findings in the hypothetical posed to the vocational expert. As to how long Mr. Onstad could stand, he himself said he could stand for two hours. It was reasonable for the ALJ to use that ability when questioning the vocational expert. A hypothetical question must completely describe a claimant's individual disabilities. *Bradley v. Bowen,* 800 F.2d 760, 763 (8th Cir.1986). This does not mean that the hypothetical must include all of the impairments a claimant alleges. It is required to include only those impairments that the ALJ finds actually exist, and not impairments the ALJ rejects—assuming, of course, that the ALJ's findings are supported

by substantial evidence. Here, the findings are so supported.

Affirmed.