## Seebetha RICHMOND, 432–74–6945, Plaintiff,

v.

## John J. CALLAHAN, Commissioner, Social Security Administration,[1] Defendant.

### No. CIV. 97–1001.

United States District Court, W.D. Arkansas, El Dorado Division.

Aug. 20, 1997.

---

1. President Clinton appointed John J. Callahan to serve as Acting Commissioner of Social Security, effective March 1, 1997, to succeed Shirley S. Chater. Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, John J. Callahan should be substituted for Shirley S.

Denver L. Thornton, El Dorado, AR, for Plaintiff.

larry R. McCord, Asst. U.S. Atty., Fort Smith, AR, for Defendant.

## MEMORANDUM OPINION

SHEPHERD, United States Magistrate Judge.

### Factual and Procedural:

Plaintiff, who is seeking benefits due to back pain, abdominal tumor, arthritis, hypertension, and esophagus and bowel trouble, was found not disabled within the meaning of the Social Security Act (hereinafter "the Act"), by the Commissioner of the Social Security Administration (hereinafter "Commissioner"). The only issue before this Court is whether the Commissioner's decision that plaintiff is not disabled within the meaning of the Act is supported by substantial record evidence. Specifically, the plaintiff asserts the Administrative Law Judge (hereinafter "ALJ"): improperly found that the plaintiff did not meet the Medical Listing found at Rule 201.01.

Plaintiff protectively filed for supplemental security income benefits (hereinafter "SSI") on November 1, 1993. Her application was denied both initially and upon reconsideration (T. 62–64, 69–70). On May 23, 1994, the plaintiff timely requested an administrative hearing before an ALJ. Her hearing was held on November 21, 1995, after which the ALJ issued his written decision dated December 12, 1995.

The ALJ concluded that plaintiff has not been under a disability within the meaning of the Social Security Act at any time through the date of the ALJ's decision (T. 22).

The Appeals Council denied plaintiff's request for a review of the ALJ's decision (T. 2), making the ALJ's decision the final decision of the Commissioner (T. 19–22).

Plaintiff timely filed the instant complaint in this Court (Doc. # 1). Appeal briefs have been filed by the parties herein (Doc. # 5 & 6).

Plaintiff, who was 57 at the time of the hearing (T. 43), has indicated that she has a

Chater, as the defendant in this suit. No further action need be taken to continue this suit by

reason of the last sentence of section 205(g) of the Social Security Act, *42 U.S.C. § 405(g).*

third grade education (T. 44–45). However, she also testified that she attended the ninth grade, although she did not attend grades one through nine consecutively (T. 44–45, 86). Importantly, the plaintiff testified that she was able to read and write, perform simple arithmetic (add, subtract, multiply and divide), and make change (T. 46–47). She has past relevant work as a domestic (T. 47, 76).

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. *20 C.F.R. § 404.1520(b).* If the claimant is, benefits are denied; if not, the evaluation goes to the next step.

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has a severe impairment or combination of impairments. *Id., § 404.1520(c); see 20 C.F.R. § 404.1526.* If not, benefits are denied; if so, the evaluation proceeds to the next step.

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 404.1520(d).* If so, benefits are awarded; if not, the evaluation continues.

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 404.1520(e).* If so, benefits are denied; if not, the evaluation continues.

Step 5 involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given claimant's age, education and work experience. *Id., § 404.1520(f).* If so, benefits are denied; if not, benefits are awarded.

■ The ALJ considered plaintiff's impairments by way of the five-step sequential evaluation process. In his written decision, the ALJ made the following relevant findings:

2. The medical evidence establishes that the claimant has hypertension and mild arthritis.

3. The claimant's subjective allegations are not borne out by the overall record and are found not to be fully credible.

4. The claimant does not have any impairment or combination of impairments which significantly limits her capacity for the performance of basic work related activities.

5. The claimant does not have a severe impairment within the meaning of Social Security Administration regulations.

6. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR 416.920(e)).

(T. 22).

### Discussion:

This court's review is limited to whether the decision of the Commissioner to deny disability benefits is supported by substantial evidence on the record as a whole. *Lorenzen v. Chater,* 71 F.3d 316, 318 (8th Cir.1995). Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion. *Pickney v. Chater,* 96 F.3d 294, 296 (8th Cir.1996). We must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. *Johnson v. Chater,* 87 F.3d 1015, 1017 (8th Cir.1996) (citing *Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir.1993)).

■ The plaintiff was treated at the Family Practice Center for dysfunctional uterine bleeding, which was controlled and resolved (T. 104–116). She was also treated for hypertension, which is controlled (T. 109, 137, 142, 153). If an impairment can be controlled by treatment or medication, it cannot be considered disabling. *Roth v. Shalala,* 45 F.3d 279, 282 (8th Cir.1995); *Stout v. Shalala,* 988 F.2d 853, 855 (8th Cir.1993).

An ultrasound performed on October 27, 1989 suggested a uterine leiomyoma.[2] The record, however, does not contain evidence of physical limitations related to or resulting from this diagnosis. An ECG done on May 21, 1992 was normal (T. 135). Further, a chest x-ray taken on May 21, 1993 was read by Dr. G.S. Kang, M.D., as indicating:

No radiologically detectable acute cardiopulmonary process. Mild degree of pectus excavatum.[3] Mile degree of levoscoliosis[4] and straightening of the dorsal spine.

(T. 133).

The plaintiff was treated by Dr. Stephen Pinkerton, M.D., on three occasions. Initially, she reported to Dr. Pinkerton's office on June 9, 1993, for a general check-up. She complained of lower back pain and stiffness in the morning. Dr. Pinkerton diagnosed hypertension and arthritis (T. 142). On July 7, 1993, the plaintiff returned to Dr. Pinkerton. A blood pressure check revealed "no problems" although the plaintiff continued to complain of back pain (T. 142). Her diagnosis was unchanged. On June 30, 1994, the plaintiff again saw Dr. Pinkerton. She indicated she had been involved in a motor vehicle accident, and complained of nervousness and back stiffness. However, it was noted that she moved all extremities well (T. 140). Finally, in a letter dated January 20, 1994, Dr. Pinkerton observed:

Seebetha Richmond is a fifty-four year-old female I have seen twice in regards to her blood pressure and some mild arthritis in her lower back.

Her hypertension is well controlled and her arthritis is more of a minor discomfort than a problem.

I find nothing on her physical exam which would limit any of her work activities.

(T. 141).

Finally, we note that the administrative record contains progress notes pertaining to plaintiff's treatment at the South Arkansas Regional Health Center (hereinafter "SARHC"). Plaintiff referred herself to the SARHC on June 5, 1989, and continued treatment until September 14, 1989 (T. 145–154). Her diagnosis was phase of life problems (T. 154). Her last appointment on September 14, 1989 with Dr. Yvonne Barton, Ph.D., resulted in this summary:

Psychological assessment at this time in a formal way does not seem indicated. There is no evidence of a psychiatric disorder, and her intellectual skills appear average to borderline. Physician at AHEC (Dr. Beam) reportedly says she is a strong woman. It is likely that she would malinger on formal testing as she appears to be trying to qualify for Disability benefits.

(T. 145).

■ We note that it is significant that plaintiff did not allege a disabling mental impairment in her application for benefits. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993). An ALJ has no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability. *Brockman v. Sullivan*, 987 F.2d 1344, 1348 (8th Cir.1993); *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir.1989) (claimant did not allege mental disability due to mental impairment and presented only minimal evidence of anxiety).

Further, the ALJ herein did consider the records from SARHC, noting:

Records from this facility show that the claimant had numerous vague physical complaints and symptoms of menopause...

The evidence fails to show that the claimant's daily activities are restricted due to emotional causes and there is no significant deficit in her ability to function socially. The record does not show any significant levels of deficiencies of concentration, persistence or pace; or any actual episodes

---

**2.** A leiomyoma is a benign tumor derived from smooth muscle, most commonly of the uterus; call also fibroid. *Dorland's Medical Dictionary*, p. 906 (27th Ed.1988).

**3.** Pectus excavatum is defined as undue depression of the sternum. Id., p. 1245.

**4.** Levoscoliosis is defined as an appreciable lateral deviation to the left in a normally straight vertical line of the spine. Id., p. 1497.

of deterioration or decompensation in work settings. The Administrative Law Judge finds that the claimant does not have a medically determinable mental impairment within the meaning of the Social Security Administration regulations.

(T. 20). We conclude that the ALJ's finding is supported by substantial evidence of record.

At Step 2, the ALJ concluded that plaintiff had no impairment(s) which significantly limited her ability to perform work-related activities, so that she therefore had no severe impairment, and was not disabled (T. 22).

The Supreme Court has recognized that this severity regulation increases efficiency by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found disabled even if their age, education and work experience were taken into account. *Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). However, a majority of the Court adopted a standard allowing a denial of benefits at Step 2 for "[o]nly those claimants with slight abnormalities that do not significantly limit 'any work activity.'" *Yuckert,* 482 U.S. at 158.

Thus, the sequential evaluation process can be terminated at Step 2 only in cases where there is "no more than a minimal effect on the claimant's ability to work." *Hudson v. Bowen,* 870 F.2d 1392, 1396 (8th Cir.1989). The medical evidence showed that plaintiff's conditions are controlled with medication (T. 104–116, 109, 113, 116, 137, 142, 153, ). A medical condition that can be controlled by treatment is not disabling. E.g., *Warford v. Bowen,* 875 F.2d 671, 673 (8th Cir.1989). That is still true in a Step 2 determination. See *Williams v. Sullivan,* 960 F.2d 86, 89 (8th Cir.1992).

Thus, in light of the ALJ's determination at step two of the sequential evaluation process, and our finding that this determination is clearly supported by substantial evidence of record, we do not reach plaintiff's lone contention, that her impairment meets or equals the listings.

*Conclusion:*

Accordingly, we conclude that the decision of the ALJ denying benefits to the plaintiff herein is supported by substantial evidence of record and should be affirmed. We further conclude that the plaintiff's Complaint should be dismissed with prejudice.